**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| KENTHONY JEVELLE JACKSON, §<br>(TDCJ-CID #1899546) § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-16-1170 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND OPINION

Petitioner, Kenthony Jevelle Jackson, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a conviction in the 85th Judicial District Court of Brazos County, Texas. Respondent filed a motion for summary judgment, (Docket Entry No. 14), and copies of the state court record. Jackson has filed his response. (Docket Entry No. 17). After consideration of the motion and response, the record, and applicable authorities, the court grants respondent's motion. The reasons for this ruling are stated below.

## I.    Background

Jackson pleaded guilty to the felony offense of aggravated robbery. (Cause Number 11-00396-CRF-85). On October 30, 2013, the jury sentenced Jackson to twenty-three years imprisonment. The Tenth Court of Appeals of Texas affirmed Jackson's conviction on January 22, 2015. *Jackson v. State,* No. 10–13–00397–CR, 2015 WL 294684 (Tex. App. -- Waco 2015, no pet.)(not designated for publication). Jackson did not file a petition for discretionary review in the

Texas Court of Criminal Appeals. Jackson filed an application for state habeas corpus relief on October 13, 2015, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without a hearing on March 9, 2016. (Docket Entry No. 15-18, *Ex parte Jackson,* Application No. 84,632-01, p. 1).

On April 29, 2016, this court received Jackson's federal petition. Jackson contends that his conviction is void for the following reasons:

(1)     trial counsel, Jerry L. Gribble, II, rendered ineffective assistance by failing to notify him of a five-year plea bargain offer;

(2)     appellate counsel, Calvin D. Parks, rendered ineffective assistance by failing to:

      a. argue a claim that counsel thought was meritless; and

      b. argue that trial counsel failed to convey the five-year plea offer; and

(3)     the trial court erred in denying his *Batson v. Kentucky*, 476 U.S. 79 (1986), challenge.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-7).

Respondent argues that grounds one and two lack merit and that ground three is procedurally-barred. (Docket Entry No. 14, p. 3). In the interest of judicial economy, the court will consider all three claims on the merits.

## II. The Applicable Legal Standards

This court reviews Jackson's petition for writ of habeas corpus under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).

Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an adjudication on the merits. An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes*

*v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Jackson is proceeding *pro se*. A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Jackson's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III.     The Claim of Ineffective Assistance of Trial Counsel

Jackson complains that counsel failed to convey a five-year plea offer. Jackson states that he never refused the plea in open court because he was never informed of the plea. Jackson states that he would have accepted the plea of five years if his attorney had properly notified him of the

offer. Jackson states that he repeatedly told counsel that he would accept any plea offer of five to ten years, but he did not want probation.

To establish an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). "[S]crutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Jones*, 287 F.3d at 331. To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable

alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Even if a petitioner establishes that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland,* 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 58. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland,* 466 U.S. at 695–96. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 57–58 (1985). "In a case, such as this,

where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether 'the result of the proceeding would have been different,' 466 U.S. at 694[ ], requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." *Missouri v. Frye*, 566 U.S. 133, 146-149 (2012).

Jackson contends counsel's performance was deficient because counsel failed to inform him of the State's plea offer, allowing it to expire. Jackson further contends that had he been informed of the plea offer, he would have accepted the offer. In *Missouri v. Frye*, 566 U.S. 133, 138-146 (2012) and *Lafler v. Cooper*, 566 U.S. 156, 162-163 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected. In *Frye*, the Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea," and, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." *Frye*, 566 U.S. at 144-146. The Court held that defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms that may be favorable to the accused, prior to the offer's expiration, and that defense counsel's failure to inform a defendant of a written plea offer before it expired satisfies the deficient performance prong of the standard set forth in *Strickland v. Washington.* In *Lafler*, the defendant went to trial rather than accept a plea deal as a result of ineffective assistance of counsel during the plea negotiation process. *Lafler*, 566 U.S. at 165-167.

In addition to showing a reasonable probability he would have accepted an earlier plea, a habeas petitioner must also show that "if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Missouri*, 566 U.S. at 148.

To show prejudice from ineffective assistance of counsel where a plea offer has lapsed because of counsel's deficient performance, a defendant must demonstrate a reasonable probability she would have accepted the earlier plea offer, that the plea would have been accepted by the trial court, and that it was a plea to a lesser charge or to a sentence of less prison time. *Id.* at 147.

Jackson complains that counsel failed to convey a five-year plea offer. The record provides no support for this claim. The following exchange took place prior to the punishment phase of trial:

> MR. GRIBBLE: Judge, I wanted to get on the record just some matters of how we got to this point and document some issues that have occurred. Since we are going to the jury for punishment, I've agreed with the prosecutor that we will discuss or get on the record the plea offers that were made in this case and also -- made and rejected. And also an issue has come up -- I'll just start with that. In reviewing this case, Judge, I met with Kenthony last week on -- it was either Tuesday or Wednesday and made an arrangement at Kenthony's request and then my request to meet with the district attorney in their office on Thursday the -- whatever last Thursday was.

> MS. ESCUE: I'm not sure. Whatever last Thursday was.

> MR. GRIBBLE: Last Thursday. We met at the district attorney's office to review the evidence. And part of my reasoning in asking to do this was I was trying to explain to Kenthony what the evidence would be against him so he could intelligently make a decision today as to whether to plead guilty and let the jury go to sentencing or plead not guilty and let the jury decide guilt/innocence. Part of the problem was -- part of the reason in doing this was the vast majority of the evidence in this case is physical evidence, such as clothing and other items that were seized right after the offense. Some of the other evidence was video recordings at the scene of the offense. Because of the video recordings and all of the physical evidence I thought it would be best -- and about the only way I could do it was to show Kenthony what I believed

would be presented at trial and how I believed the State would present it at trial. So we met up at the district attorney's office. I advised Kenthony not to make any statements at all, to write down any questions he had of me afterwards so I could meet with him and just to sit and listen. At that point, Ms. Escue and Ms. Assabill with the district attorney's office sat in the room and were available for me to request them to present the evidence that I wanted Kenthony to see. At that point I asked them to show the video and -- on a big screen so that we could see it much better than me bringing it on a computer out to the jail. I also asked them to produce several pieces of evidence that I expected would be presented in trial. I did this because Kenthony wanted to see the evidence that they had against him. And during that meeting Kenthony never made any statements. I never asked him any questions in front of the prosecutors or even at the DA's office. But it was my request to present this evidence to him so that he would be able to make the decision today and I presented it the way I expected the prosecutor to present all admissible evidence. After that meeting I have -- I met with Kenthony a couple of times. And it was my advice to Kenthony to -- based upon the evidence to plead guilty and go to the jury for punishment. It appears he has followed my advice. I have made no promises to him as to the outcome on this, but it was -- based upon the evidence and the evidence I showed him, it was my advice to proceed this way today. And I just wanted to make a record of what we had done in this case.

THE COURT: Okay. You made mention of plea offers that you wanted to put on the record?

MR. GRIBBLE: Yes, Judge. Plea offers -- we've had, I believe, two plea offers, one of five years in the penitentiary and one of 15 years in the penitentiary. There was -- there is some dispute about the -- an offer made of shock probation at some point. Kenthony remembers that; I remember it. I think there was never a written offer on this, but at some point I did take to him an offer of shock probation. Then there was an offer of five years and lately since his bond was revoked, a 15-year offer. All of those offers have been rejected. And the State has, as of some point last week, withdrawn all offers. That's why we're going to trial.

THE COURT: Very well. Is there anything about that that is inconsistent with the prosecutors' memory?

MS. ESCUE: Judge, I have nothing in the file to indicate that a shock probation offer was ever made. Mr. Baker when he initially got the case, because Mr. Jackson had no criminal history, offered him five years in exchange for his testimony against his codefendants. I have in the file that that offer was rejected. It was before Mr. Jackson picked up several other charges in other counties. When I got the case and noticed the other charges in the other counties I increased the offer to 15 years contingent on him testifying against the sole remaining defendant in this case, his brother Ricky

Jackson. That offer was refused and last week I withdrew all offers and we were set for trial.

THE COURT: Okay. You can go ahead and have a seat and we'll begin with the jury selection.

(Docket Entry No. 15-3, Reporter's Record, Vol. II, pp. 9-13).

The state habeas court found: "4. As to Ground One, the Court finds that trial counsel conveyed all plea offers to Applicant, which he rejected. Applicant failed to prove deficient performance under *Strickland's* first prong." (Docket Entry No. 15-20, *Ex parte Jackson,* Application No. 84,632-01, p. 54).

Under the AEDPA, the federal court reviewing a habeas petition defers to the factual findings of the state habeas court unless those findings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Here, there is evidence in the record to show that trial counsel presented all plea offers and that Jackson rejected those offers. The determination by the state habeas court that trial counsel notified and discussed with Jackson all of the offers for plea deals is based on competent evidence in the record and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Jackson may rely on *Missouri v. Frye,* 566 U.S. 133 (2012), to argue that trial counsel rendered deficient performance, but *Frye* is distinguishable from the case here. In *Frye,* there was no indication in the record that trial counsel had ever informed his client of the plea deal. *Frye,* 566 U.S. at 139 (noting that the state court of appeals had found that the "record is void of any evidence of any effort by trial counsel to communicate the Offer to Frye during the Offer window"). Thus,

the *Frye* Court deferred to the fact findings of the state court, whereas Jackson asks this court to do the opposite here. Unlike *Frye*, the state habeas court concluded that trial counsel had presented all offers to Jackson, and there is competent evidence in the record to support that finding. Under these circumstances, the Fifth Circuit has upheld the denial of federal habeas relief. *See, e.g., Miller*, 714 F.3d at 902 (affirming denial of habeas relief and noting that "the state habeas court expressly found that '[n]othing in the record ... indicate[d] that counsel failed to convey any plea offers from the State'"); *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995) (affirming denial of habeas relief and finding, based on the affidavit of trial counsel and a letter from the defendant, that the record supported the finding that trial counsel had informed defendant of the plea offers).

Because the state court factual determination that Jackson knew of the offer and rejected it is adequately supported in the record, the court must presume that it is correct. *Teague*, 60 F.3d at 1171. From the record before the court, the state habeas court did not unreasonably apply clearly established federal law when it determined that Jackson had voluntarily and knowingly entered pleas of guilty because he had been informed of all of the plea offers from the State. *See* 28 U.S.C. § 2254(d)(1). Further, the State's determination that counsel had presented all plea offers and that the totality of the representation provided Jackson with effective assistance of counsel was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Accordingly, respondent is entitled to summary judgment, and Jackson is not entitled to habeas relief because Jackson failed to show that trial counsel's performance fell below the objective standard required by *Strickland.*

Under the AEDPA, this court must give proper deference to the state court's determination that trial counsel rendered effective assistance. *See Ladd v. Cockrell*, 311 F.3d 349, 351 (5th Cir.

2002). Because the state court properly identified *Strickland* as the governing legal principle, the "unreasonable application" prong of section 2254(d)(1) provides the standard that governs this court's review of the state court's decision on Jackson's ineffective counsel claims. *Bell v. Cone*, 535 U.S. 685, 694-695 (2002). This court must determine whether the state court's application of *Strickland* was objectively unreasonable. *Id.*; *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003). Under section 2254(d)(1), "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236). "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

The state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law. Jackson has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## IV.    The Claim of Ineffective Assistance of Appellate Counsel

Jackson complains that appellate counsel rendered ineffective assistance by failing to raise two issues on appeal. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 6). Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985). This court reviews counsel's appellate performance under *Strickland v. Washington,* 466 U.S. 668 (1984). *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). Jackson must allege and present facts that, if proven, would show that his attorney's representation

was deficient and that the deficient performance caused Jackson prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998).

The *Strickland* standard also applies to claims of appellate counsel error during appellate proceedings. *See Smith v. Robbins,* 528 U.S. 259, 285 (2000). In considering the deficient performance prong, an attorney's decision not to pursue a certain claim on appeal after considering the claim and believing it to be without merit falls within the "wide range of professionally competent assistance" demanded by *Strickland. Smith v. Murray,* 477 U.S. 527, 536 (1986). Indeed, the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52 (1983)).

The first element requires Jackson to show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir. 1999)(quoting *Strickland,* 466 U.S. at 688). This court's review is deferential, presuming that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Effective assistance of appellate counsel does not mean counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *See Strickland,* 466 U.S. at 690-91.

To show prejudice, Jackson must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163

F.3d at 302 (quoting *Strickland*, 466 U.S. at 694). Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)(citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). Prejudice in a the context of appellate counsel error requires a petitioner to show a reasonable probability that he would have prevailed on appeal. *Robbins*, 528 U.S. at 285–86.

The court will consider Jackson's claims of ineffective assistance of appellate counsel.

## A.    Failure to Convey the Plea Offer

Jackson contends that appellate counsel failed to raise the issue of whether trial counsel failed to convey the five-year plea offer. This court has considered and rejected Jackson's claim based on ineffective assistance of trial counsel for failing to convey a plea offer. *See* Section III, *supra*. Raising this claim on appeal would have been frivolous. *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001)(finding that where each of the grounds underlying the alleged errors by counsel on appeal were found to lack merit, appellate counsel's failure to pursue relief on those bases does not constitute ineffective assistance of counsel since no prejudice resulted therefrom and because the reliability of the result of the appeal was not undermined thereby).

The record shows that appellate counsel argued that the trial court committed error in denying Jackson's *Batson* challenge following the voir dire examination. (Docket Entry No. 15-15 Appellant's Brief, p. 7). Appellate counsel's decision not to argue that trial counsel failed to convey a plea offer falls within the wide range of reasonable professional assistance.

There is no showing of a reasonable probability that, even assuming appellate counsel made unprofessional errors, the result of the proceeding would have been different but for such errors.

*Wilson v. Cockrell*, 2003 WL 21672834, at *11 (5th Cir. July 17, 2003); *Duhamel v. Collins,* 955

F.2d 962, 965 (5th Cir. 1992).

### B.     Failure to Challenge a Juror's Qualifications

Jackson asserts that appellate counsel should have raised the issue of whether a juror lacked

comprehension of the English language, regardless of appellate counsel's personal beliefs about

whether it would be successful.

The following exchange took place after the jury was impaneled:

THE COURT: . . . Do any of you have any questions that I can answer for you?
(Juror indicating)

THE COURT: Yes, ma'am?

UNIDENTIFIED JUROR: I'm not sure if I can assess fairly because English is not
my native language. I don't understand 100 percent of what you're saying. I have to
understand 100 percent to assess fairly.

THE COURT: Ma'am, why didn't you speak up earlier?

UNIDENTIFIED JUROR: I don't know.

THE COURT: You seem to understand just fine.

UNIDENTIFIED JUROR: I don't know.

THE COURT: If you have some difficulty understanding what is being said, if you
will, just raise your hand, I'll tell the lawyers to repeat it again. Okay?

UNIDENTIFIED JUROR: Okay. But I'm also a human being. I have feelings. And
maybe my judgment, you know, depends on my mood, feelings. I cannot judge fairly
to be honest.

THE COURT: Well, you're on the jury now, and I have faith that you'll follow the
oath that you have taken, that you've sworn to make a decision on the basis of the
law given to you by the Court and the evidence that's presented here. I don't have
any reason to believe you would do otherwise. We'll see you tomorrow morning at
9:00.

(Jury recessed)

(Docket Entry No. 15-3, Reporter's Record, Vol. II, pp. 140-41).

The following exchange took place after the jury was recessed:

THE COURT: Anything else?

MR. GRIBBLE: Judge, based upon what Ms. Nomura said to the Court, I believe -- if I remember correctly she said English is not my native language, I do not understand 100 percent of what I hear. She -- I think she went on to say, I have to understand 100 percent of what I hear to make a decision. Judge, from that point I raise an objection to the -- I move for a mistrial. We have a jury that is -- we have a juror, based upon what she told the Court that she cannot -- she said she does not understand 100 percent and she cannot make a decision based upon that. And I move for a mistrial.

THE COURT: Denied.

MS. ESCUE: Judge, may I argue? If she's articulated a disability, then we can proceed with 11 jurors and excuse her as the less harsh alternative of the proceeding of mistrial.

MR. GRIBBLE: I'm not claiming she has a disability. I'm stating that she may not be able to read and write the English language because she said she doesn't understand it completely.

MS. ESCUE: But that's a qualification for a juror. If they are disabled, if you believe that, we can proceed with 11.

MR. GRIBBLE: I don't want to proceed with 11.

THE COURT: Ruling stands. (Proceedings recessed, 3:45 p.m.)

(Docket Entry No. 15-3, Reporter's Record, Vol. II, pp. 142-43).

The following exchange took place outside the presence of the jury on the second day of the punishment phase:

MS. ESCUE. Ms. Evans, can you tell us what your job here is in the 85th District Court?

A       I'm the court coordinator for 85th District.

Q       And I guess yesterday did you have an opportunity to hear a conversation between Juror Noa Nomura and Jamey Glenn, the bailiff of this Court?

A       I did.

Q       Did it concern her prior statements that she had trouble understanding English and her behavior the first day of jury selection?

A       Yes. She didn't state anything about English but she did apologize.

Q       Okay. Can you tell us what she told the bailiff?

A       I was sitting in my office, and sitting in front of me in the main office was Jamey Glenn the court substitute bailiff. And the juror walked in -- I can't pronounce her name -- and looked straight at Jamey and said "I'm sorry for yesterday." And Jamey kind of acted puzzled. And she said "I'm sorry for how I behaved. It was very immature of me." And he said "no need. That's not necessary. Thank you, but that's not necessary." And she said -- reiterated "I'm sorry. It was very immature of me."

Q       Okay. When she was speaking, did she seem to have any trouble articulating herself in English or understanding English?

A       Oh, no.

MS. ESCUE: Pass the witness.

MR. GRIBBLE: I have no questions, Judge.

THE COURT: All right. You may step down.

(Docket Entry No. 15-5, Reporter's Record, Vol. IV, pp. 7-8).

The state habeas court found:

5. As to Ground Two, the Court finds that appellate counsel made an informed and reasonable decision not to advance a meritless appellate issue concerning a juror who claimed she did not understand English, after she had been sworn in as a juror. The record reflects that the juror did understand English. Moreover, any potential issue was waived when both parties failed to question jurors during voir dire on their ability to read and write English. *See Stillwell v. State*, 466 S.W.3d 908, 912-13 (Tex.

App.-- Fort Worth 2015, no pet.). Applicant failed to prove deficient performance under *Strickland's* first prong.

(Docket Entry No. 15-20, *Ex parte Jackson,* Application No. 84,632-01, p. 54).

The Court of Criminal Appeals explicitly based its denial of habeas relief on this finding. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Jackson has not produced clear and convincing evidence to rebut this finding. The state court's decision as to the effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly established federal law. Jackson has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## V.    The *Batson* Claim

In claim 3, Jackson alleges that the trial court erred in denying his *Batson* challenge. The respondent argues that when Jackson presented this claim in his state habeas application, the Texas Court of Criminal Appeals refused to consider it on its merits. Specifically, when it declined to review the merits of this claim in state habeas, the Court of Criminal Appeals did so based on the findings and conclusions of the trial court. (Docket Entry No. 15-18, *Ex parte Jackson,* Application No. 84,632-01, p. 1).

The state habeas court found:

> 6. As to Ground Three, Applicant's complaint, that the trial court erred in denying his *Batson* challenge, was raised and overruled on direct appeal. *See Jackson v. State,* No. 10-13-00397-CR, 2015 WL 294684, *1 (Tex. App. - Waco Jan. 22, 2015, no pet.)(not designated for publication)("We cannot say the trial court's decision in overruling Jackson's *Batson* challenge was clearly erroneous. Jackson's sole issue is overruled."). Habeas corpus cannot be used to raise the same contentions that were raised on appeal but were adjudicated adversely to the petitioner. *Ex parte Bland,* 228 S.W.2d 170, 171 (Tex. Crim. App. 1950).

(Docket Entry No. 15-20, p. 55).

The respondent argues that although Jackson presented this claim in his state habeas application, he did so in a procedurally improper manner; hence the Texas Court of Criminal Appeals refused to address the merits of the claim. Moreover, Jackson did not raise this claim in a petition for discretionary review. The respondent argues that this claim is unexhausted because the federal exhaustion doctrine requires Jackson to have presented this claim to the Texas Court of Criminal Appeals in a procedurally correct manner.

Under the AEDPA, federal courts lack the power to grant habeas corpus relief on unexhausted claims. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003) ("28 U.S.C. § 2254(b)(1) requires that federal habeas petitioners fully exhaust remedies available in state court before proceeding in federal court."), *cert. denied*, 543 U.S. 835 (2004); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003); *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003); *Henry v. Cockrell*, 327 F.3d 429, 432 (5th Cir. 2003) ("Absent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief."), *cert. denied*, 540 U.S. 956 (2003); *Mercadel v. Johnson*, 179 F.3d 271, 276-77 (5th Cir. 1999); *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998), *cert. denied*, 528 U.S. 895 (1999). However, Title 28 U.S.C. § 2254(b)(2) empowers a federal habeas court to deny an unexhausted claim on the merits. *Pondexter v. Quarterman*, 537 F.3d 511, 527 (5th Cir. 2008), *cert. denied*, 555 U.S. 1219 (2009); *Moreno v. Dretke*, 450 F.3d 158, 166 (5th Cir. 2006), *cert. denied*, 549 U.S. 1120 (2007); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002), *cert. dism'd*, 541 U.S. 913 (2004); *Daniel v. Cockrell*, 283 F.3d 697, 701-02 (5th Cir. 2002), *cert. denied*, 537 U.S. 874 (2002).

The exhaustion of *all* federal claims in state court is a fundamental prerequisite to requesting federal collateral relief under Title 28 U.S.C. Section 2254. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995), *cert. denied*, 516 U.S. 1050 (1996); 28 U.S.C. § 2254(b)(1)(A).

The Fifth Circuit noted that the express language of the federal habeas statute authorizes a federal court to reach the merits of an unexhausted claim. *Mercadel v. Cain,* 179 F.3d 271, 276 (5th Cir. 1999). Section 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." This court clarified the meaning of this provision in *Mercadel,* noting that a federal court may only deny an unexhausted claim on the merits if the court is convinced the claim has no merit. 179 F.3d at 276. A claim lacks merit if "'it is perfectly clear that the applicant does not raise even a colorable federal claim.'" *Id.* at n.4 (quoting *Granberry v. Greer,* 481 U.S. 129, 135 (1987)). Though Jackson failed to exhaust state court remedies as to his *Batson* claim, this court is authorized to deny relief on the merits.

Jackson asserts that the prosecutor used her peremptory strikes to remove African-Americans from the venirepanel. He further claims that at least one of the explanations offered by the prosecutor was pretextual. Jackson notes that Mr. Maxey was challenged by the State on the basis that several of his family members were formerly prosecuted by the Brazos County District Attorney's Office. Jackson argues that during voir dire, the State never proffered the question to the entire venirepanel as to whether anyone ever had a friend or close family member who was charged and prosecuted in Brazos County. Jackson states that there were no other potential jurors that were asked to approach the bench and questioned about prior prosecutions of family members.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a party from challenging potential jurors on the basis of their race. U.S. CONST. amend. XIV; *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). A trial court follows a three-step process to evaluate a claim that a litigant has made a peremptory strike based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476 (2008). First, a defendant must make a prima facie showing that the State has used a peremptory challenge to remove a potential juror on account of race. *Id.; Purkett v. Elem*, 514 U.S. 765, 767 (1995). A defendant may establish a prima facie case solely on evidence concerning the State's exercise of peremptory challenges at trial. *Batson*, 476 U.S. at 96. He must also show that these facts and any other relevant circumstances raise an inference that the State has excluded potential jurors from the petit jury on account of their race. *Id.*

Once the defendant has made a prima facie showing, the burden shifts to the State to come forward with a race-neutral explanation for challenging the jurors. *Snyder*, 552 U.S. at 476–77; *Batson*, 476 U.S. at 97–98. If the State offers race-neutral reasons for the strikes, the burden shifts again to the defendant to show that the State's race-neutral explanations for the strikes are contrived or a pretext to conceal a racially discriminatory intent. *Shuffield v. State*, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006); *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). The credibility of the prosecutor who offers race-neutral explanations for disparate striking of jurors can be measured by "the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller–El v. Cockrell*, 537 U.S. 322, 339 (2003).

An appellate court will disturb a trial court's ruling on a *Batson* motion only if it is "clearly erroneous." *Snyder*, 552 U.S. at 477; *Guzman v. State*, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002).

Generally, a fact finder's decision is clearly erroneous when it leaves an appellate court with a "definite and firm conviction that a mistake has been committed." *Guzman*, 85 S.W.3d at 254. The appellate court reviews the evidence in the light most favorable to the trial court's ruling and affords great deference to that ruling. *Jasper*, 61 S.W.3d at 422. Furthermore, a claim that the proffered race neutral reasons for strikes are pretextual presents a question of fact, not law, and the trial court is in the best position to evaluate such claims. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 846 (2008); *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). The ultimate plausibility of a race-neutral explanation is to be considered in the context of whether the defendant has satisfied his burden to show that the strike was the product of the prosecutor's purposeful discrimination. *Watkins*, 245 S.W.3d at 447.

At trial, counsel made the following *Batson* challenge:

MR. GRIBBLE: I have a motion, Judge.

THE COURT: All right. Go ahead.

MR. GRIBBLE: Judge, in looking at the State's strikes, just for the record, there was only one double strike, No. 27, Ms. Desern. Number 27 was a double strike. Otherwise, within the strike zone, Judge, we had four African-American persons, and for the record my client is African-American. The State struck three of the four. They struck No. 6, Ms. Wimbish, No. 8, Mr. Maxey, and No. 9, Ms. Cooks. And in fairness we had also agreed on No. 10, State and defense agreed on No. 10 prior to the strikes. That leaves only one African-American male within the strike zone that was not struck. I move under -- Judge, I make a Batson challenge that the State struck three of the four African-Americans left within the strike zone.

THE COURT: Who was the fourth one that wound up on the jury?

MR. GRIBBLE: Mr. Robinson, No. 16, an African-American male should be on the jury. The State exercised one-quarter of its strikes against African-American persons and struck three out of four of the available African-American persons within the strike zone. Judge, I think that's significant.

THE COURT: Your response?

MS. ESCUE: Judge, if you want I can give the reasons why each one of them was struck. Tryphenia Wimbish, she has prior criminal history. She was arrested for tampering with a government record; unknown disposition. I talked to Grimes County. She ended up paying back the restitution she owed; they dismissed it. She was arrested. Furthermore, she answered that the goal of the criminal justice system should be rehabilitation. You will notice that we struck every single rehabilitation, except for one because we ran out of strikes. Juror Niashannia Cooks also answered rehabilitation. She has prior criminal history. She has an arrested -- excuse me, she pled guilty to theft and received six months deferred adjudication in 1991. She was, again, arrested for theft in 1992 and it was dismissed. She was convicted of criminal trespass, which also is an offense that the defendant is charged with and which the jury will be hearing evidence for; pled guilty and received 12 months probation. Was arrested for theft by check in 1997 and answered rehabilitation. And Mr. Maxey was the third African-American juror we struck. Mr. Maxey is related and lived in the same house as Christopher Maxey. He's also related to several other members of the Maxey family, which our office has prosecuted and sent to prison. Because of the familial relationships with numerous members of his family, all of which have been prosecuted by our office, we struck him, including the fact that he lived in the same house as his uncle who we prosecuted.

THE COURT: Any cross?

MR. GRIBBLE: Judge, I would ask of the 36 people in the strike zone, other than No. 6 and No. 9 that Ms. Escue cited as being struck for prior criminal history, were there any other people you struck –

MS. ESCUE: Left on the jury with criminal history?

MR. GRIBBLE: -- left on the jury with criminal history, yes?

MS. ESCUE: No.

MR. GRIBBLE: No further question, Judge.

THE COURT: Any argument on your motion?

MR. GRIBBLE: Judge, just under Batson I would argue that we have been -- because my client is African-American, the prosecutors' actions have denied three of the four possible African-Americans from being on the jury. I do understand that they have provided race-neutral reasons for that.

THE COURT: Motion overruled.

(Docket Entry No. 15-3, Reporter's Record, Vol. II, pp. 132-35).

As noted, the Texas Court of Criminal Appeals found that habeas corpus cannot be used to raise the same contentions that were raised on appeal but were adjudicated adversely to Jackson. "When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250, 256 (5th Cir. 1999). This "look through" doctrine enables a federal habeas court "to ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Id.; see also Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of relief "on the findings of the trial court" by the Texas Court of Criminal Appeals adopts an express finding by the trial court that a claim was procedurally barred from habeas review); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

In this case, the Tenth Court of Appeals rejected Jackson's *Batson* challenge. Because the Tenth Court of Appeals issued the last reasoned opinion on this matter, this court "looks through" the Texas Court of Criminal Appeals' order to the appellate court's decision.

The Tenth Court of Appeals found:

Kenthony Jevelle Jackson was convicted of aggravated robbery and sentenced to 23 years in prison. *See* Tex. Penal Code Ann. § 29.03(2)(B) (West 2011). Jackson contends in his sole issue that the trial court erred in denying his *Batson* challenge to the State's use of a peremptory strike against Juror 8, an African–American man. *See Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed.2d 69, 106 S. Ct. 1712 (1986). The State specified that it struck Juror 8 because numerous members of the prospective juror's family had been prosecuted by the District Attorney's Office and because he had

lived in the same house with his uncle, who the State had also prosecuted. Jackson conceded at trial that the State's reasons for striking Juror 8 were race-neutral; and, once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State,* 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Our standard of review is whether the trial court's ruling was clearly erroneous. *Grant v. State,* 325 S.W.3d 655, 657 (Tex. Crim. App. 2010).

Jackson contends on appeal, however, that the strike was pre-textual because the State never inquired of the other venire members whether any had family members that had been prosecuted by the District Attorney's office. In a similar situation, the Court of Criminal Appeals interpreted United States Supreme Court precedent as not requiring such further inquiry. *See Grant v. State,* 325 S.W.3d 655, 661 (Tex. Crim. App. 2010). That interpretation is binding on this Court, and therefore the State was not required to inquire any further to validate or invalidate, confirm or refute the basis stated for its own peremptory strike. We cannot say the trial court's decision in overruling Jackson's *Batson* challenge was clearly erroneous. Jackson's sole issue is overruled.

We affirm the trial court's judgment.

*Jackson v. State,* No. 10–13–00397–CR, 2015 WL 294684 (Tex. App. -- Waco 2015, no pet.)(not designated for publication).

The state court's decision was not contrary to clearly established federal law. Jackson is not entitled to habeas relief. 28 U.S.C. § 2254(d)(1).

## VI. Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 14), is GRANTED. Jackson's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues

that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). Where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Jackson's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Jackson has not made the necessary showing for issuance. Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on ___June 27___, 2017.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE